Kevin HOPKINS, Appellant,

v.

STATE of Indiana, Appellee.

No. 1280S436.

Supreme Court of Indiana.

Dec. 30, 1981.

Ray L. Szarmach, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged with Murder as defined in I.C. 35–42–1–1 [Burns' 1979]. He was convicted by a jury. He was sentenced to a sixty (60) year term of imprisonment.

The record shows the following facts. On June 9, 1979, appellant and two companions drove from Fort Wayne to Hammond to participate in an alleged insurance fraud scheme with one Kenneth Lewellen, a barbershop owner in Hammond. Upon arriving at Lewellen's shop, and after all the customers had left, appellant and one of his companions entered the shop. The third member of the trio, one Thomas Mullins,

waited outside in the car. A few minutes later appellant and his partner emerged from the shop. The party who entered the shop with appellant then drove Lewellen's car to Lewellen's home and the other two followed. There appellant took Lewellen's motorcycle, and the three drove back to Fort Wayne, with appellant on the motorcycle, Mullins in the car they drove to Hammond, and the third member of the group in Lewellen's car. The motorcycle malfunctioned and was dumped in a field near Ossian. The next day Lewellen was found dead in the shop, with multiple stab wounds to the back.

All three were eventually arrested and charged with the crime. The member of the group who entered the shop with appellant committed suicide in jail. Mullins made a plea bargain agreement with the State and testified at appellant's trial in exchange for having the charges against him dropped.

Appellant claims the trial court erred in overruling his objection to statements made by the prosecutor on *voir dire* examination of prospective jurors. During the course of the examination, the prosecutor told the prospective jurors, Mullins, the State's key witness in the case, had struck a plea bargain agreement with the State to testify against appellant in exchange for having the charges against him dropped. Appellant argues such conduct by the prosecutor is objectionable and is grounds for reversal because the State impermissibly cultivated and conditioned the jury to be more receptive to the State's cause, instead of using *voir dire* for the legitimate purpose of removing prospective jurors from the panel for bias or prejudice.

■ The trial court has broad discretionary power in regulating the form and substance of *voir dire* examination. *Lynn v. State*, (1979) Ind., 392 N.E.2d 449; *Roberts v. State*, (1978) 268 Ind. 127, 373 N.E.2d 1103. In *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409, this Court considered the propriety of the long standing practice of using *voir dire* to begin trying the case before any evidence was taken. In that case we said:

"Much time and energy are consumed in interrogating not with a view towards culling prospective jurors because of bias or prejudice but to the end that bias and prejudice may be utilized to advantage and prospective jurors cultivated and conditioned, both consciously and subconsciously, to be more receptive to the cause of the examiner .... We think this practice is repugnant to the cause of justice and should terminate." *Id.* at 521. 297 N.E.2d at 411–412.

Later in *Blackburn v. State*, (1979) Ind., 390 N.E.2d 653, 656, this Court stated, "It is not the function of *voir dire* examination to 'inform' the jurors of anything." (Emphasis in original.)

Appellant bases his argument on the language of the *Robinson* and *Blackburn* cases. Much of his argument is based on a reply the prosecutor made in response to a question from the court as to how deeply into the plea bargain agreement the State intended to go during *voir dire*. The prosecutor replied, "I don't plan to go into details. Just want to make sure [the jurors] are *informed.*" (Emphasis added.) Appellant points to the specific language in *Blackburn, supra*, quoted above and argues the State upon inquiry conceded it was trying to do the very thing this Court prohibited in *Blackburn*; namely, to inform the jurors of something. Appellant concludes the trial court abused its discretion by permitting these statements.

In *Robinson*, the comment we disapproved was one that tended to plant a preconceived notion in the jurors' minds as to evidence about the facts of the case. In *Phelps v. State*, (1977) 266 Ind. 66, 360 N.E.2d 191, *cert. denied*, 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110, the prosecutor inquired about jurors' preconceived notions regarding the crime involved (rape), specifically whether the jurors were predisposed to believe rape charges were fabricated or whether a rape victim should resist the attack to the point of death. We considered the principle expressed in *Robinson, supra*, and held, "Where ... the questions

were designed to sound the jurors' attitudes towards rape and *the hypothetical questions did not suggest prejudicial evidence not adduced at trial*, the trial judge did not abuse his discretion in permitting the questions." (Emphasis added.) *Id.* at 69, 360 N.E.2d at 193. In *Everly v. State*, (1979) Ind., 395 N.E.2d 254, we did not interpret *Robinson, supra,* to prohibit inquiry about jurors' preconceived notions regarding a line of defense a defendant intended to use.

▉ Application of the *Robinson* principle to these cases indicates the practice we disapprove is that of using *voir dire* to implant in jurors' minds ideas about the substantive facts of the case being tried. On the other hand, we see nothing wrong in using *voir dire* to inquire into jurors' biases or tendencies to believe or disbelieve certain things about the nature of the crime itself or about the particular line of defense. *Everly, supra; Phelps, supra.* We believe inquiry into jurors' predispositions to believe or disbelieve a witness who has made a plea bargain agreement with the State is not an attempt to implant into jurors' minds evidentiary matter before any evidence is actually produced. We see nothing wrong in inquiring into jurors' minds about their biases in regard to the credibility of witnesses with an eye toward removing prospective jurors predisposed to disbelieve those with certain characteristics, such as plea bargainers. The prosecutor, later in the examination, asked the prospective jurors if any would tend to disbelieve Mullins because he had entered into a plea bargain. We hold the trial court did not abuse its discretion by permitting the questions.

▉ We also note appellant in his brief concedes the State's comment informed the jurors "of one of the *weaknesses* of his case." (Emphasis added.) We fail to see how appellant can argue this alleged error harmed appellant if it was in effect an admission of a weakness in the State's case. In *Mahoney v. State*, (1979) Ind.App., 388 N.E.2d 591, the Court of Appeals considered a challenge to *voir dire* examination and held any error resulting from improper questioning must also have harmed the de-

fendant to constitute reversible error. We approve that decision and hold the same principle applies here.

Appellant claims the trial court erred in denying his challenge for cause on Juror No. 33. This juror indicated she expected the defendant to come forward with some exculpatory evidence in his own behalf. The trial court denied appellant's challenge for cause. Appellant used a peremptory challenge to remove the juror from the panel.

▉ Appellant argues a juror's notion that a defendant is obligated to come forward with some evidence in his own behalf is grounds for a challenge for cause. However, appellant concedes he did not use all his peremptory challenges in the case. Any error resulting from denial of a challenge for cause is harmless if the party does not use all his preemptory challenges. *Holt v. State*, (1977) 266 Ind. 586, 365 N.E.2d 1209; *Monserrate v. State*, (1976) 265 Ind. 153, 352 N.E.2d 721. Not having used all peremptory challenges, any error resulting from denial of appellant's challenge for cause was harmless.

Appellant claims the trial court erred in permitting witness Mullins to define a certain slang term used by appellant in a conversation with Mullins after the murder. Mullins testified appellant told him he had to "off the dude," referring to Lewellen. The State asked Mullins his understanding of the meaning of the term "off" as used in this context. Appellant objected, the objection being sustained. After a bench conference the State asked the question again and the witness was allowed to explain the term as used by appellant ordinarily means "to kill or get rid of something."

▉ Appellant argues the question should have been disallowed, as it asks the witness to speculate as to appellant's intent. Appellant cites *Strickland v. State*, (1977) 265 Ind. 664, 359 N.E.2d 244, and *Stein v. State*, (1975) 166 Ind.App. 133, 334 N.E.2d 698, in support of the proposition that one witness may not speculate as to the intent of another. Though certainly this is a cor-

rect statement of law, we fail to see how it applies to the case at bar. The questions asked were whether the witness was familiar with the term as used by the appellant, and what the witness's understanding as to the meaning of the term was. Appellant makes no logical argument in his brief serving to support the conclusion the question went to appellant's intent. It is certain that when people use speech they "intend" that certain meanings will be attached to their words. That does not mean all evidence of a party's speech should be excluded because a party "intends" that his words will be interpreted in a certain way. Carried to its logical conclusion, this idea would emasculate the admission of a party opponent exception to the hearsay rule. We can find no cases, nor does appellant cite any, that construe the meaning of "intent" so broadly. The admission of this testimony into evidence was proper and constitutes no error.

Appellant next claims the trial court erred in admitting into evidence Exhibit No. 21, a photograph showing decedent's wounds, which constituted more than twenty (20) stab wounds to the back. The photograph was admitted during the reception of testimony from a police officer who investigated the crime and attended the autopsy performed on the victim. Appellant argues the photographs were "highly prejudicial, and the prejudice outweighed any slight probative value."

This Court has held the fact a photograph may arouse the passion of the jury is an insufficient ground on which to exclude it from evidence. *Porter v. State*, (1979) Ind., 391 N.E.2d 801; *Pierce v. State*, (1970) 253 Ind. 650, 256 N.E.2d 557; *Wilson v. State*, (1966) 247 Ind. 680, 221 N.E.2d 347. A photograph should be admitted if it is relevant. Relevancy is to be determined by asking whether or not a witness would be permitted to describe verbally that which the photograph depicts. *Porter, supra; Propes v. State*, (1978) 269 Ind. 626, 382 N.E.2d 910. Certainly it was proper to admit testimony from the police officer as to the cause of death of the victim. The admission of the photograph did no more than depict what the officer described without objection from appellant. The photograph was properly admitted by the trial court.

Appellant's next two assignments of error have been consolidated. They both relate to the trial court's denial of appellant's two motions for a mistrial following his objection to alleged prosecutorial misconduct. This occurred when the prosecutor elicited testimony from Mullins indicating appellant had committed other crimes in connection with the present crime. Mullins testified appellant smoked marijuana in the car on the way to the victim's shop, and later he testified appellant threatened him while the two were in jail following their arrest. It is well established evidence of other crimes is inadmissible except where it may be used to show intent, motive, purpose, identification, or common scheme or plan. *Howell v. State*, (1980) Ind., 413 N.E.2d 225; *Henderson v. State*, (1980) Ind., 403 N.E.2d 1088. Appellant argues since the evidence of the commission of these crimes cannot be admitted for any of the purposes delineated in the exception, its admission was erroneous and a mistrial should have been granted.

The granting of a motion for mistrial lies within the sound discretion of the trial court and failure to grant such a motion will be grounds for reversal only where there has been an abuse of that discretion. *Abrams v. State*, (1980) Ind., 403 N.E.2d 345; *Garcia v. State*, (1980) Ind., 400 N.E.2d 119. The alleged prosecutorial misconduct is so prejudicial as to warrant the granting of a mistrial where the misconduct places the defendant in a position of grave peril to which he should not have been subjected. *Rock v. State*, (1979) Ind., 388 N.E.2d 533; *Thompkins v. State*, (1978) Ind., 383 N.E.2d 347; *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843. We have also indicated the measurement of whether or not the defendant is placed in a position of grave peril is to be determined by looking at "the probable persuasive effect of the misconduct on the jury's deci-

sion, not by the degree of impropriety of the conduct." *Maldonado, supra*, at 449, 355 N.E.2d at 848.

Applying these principles to the case at bar, we fail to see how appellant was placed in a position of grave peril, thus necessitating the granting of a mistrial. The trial court admonished the jury thoroughly to disregard the testimony about appellant smoking marijuana. We have held where the trial court adequately admonishes the jury to disregard improper conduct, the error is presumed cured. *Harris v. State*, (1979) Ind., 396 N.E.2d 674; *Thompkins, supra*. As to the remark about appellant's intimidation of Mullins, the nature of Mullins's testimony about what appellant said was such that we do not believe the jury was affected by it. The exact comment was, "I forget exactly the phrase he put to me, but told me to be strong or he would have something coming to me." We believe this rather vague remark contributed nothing to the jury's verdict, considering the other evidence pointing to appellant's guilt.

Appellant claims the trial court erred in admitting into evidence over his objection Exhibits No. 22 through 26 and No. 35. Exhibits 22 through 26 were bits of broken glass found at the scene of the crime, and No. 35 was a vial of blood drawn from the body of the victim at the autopsy. The blood in the vial and the blood on the bits of glass were tested at the Northwest Indiana Criminal Toxicology Lab to see if the blood in the glass was that of the victim. Mullins had testified appellant entered the victim's shop with a glass pop bottle but came out without it. Appellant's argument is the State failed to properly establish the chain of custody required for admission of the exhibits into evidence. This argument is based on the failure of the police to completely fill out the evidence card attached to each piece of evidence when it was first gathered and put into plastic bags for handling and safekeeping. The cards themselves fail to provide documentary evidence as to the whereabouts of the evidence during the entire period of time from their gathering until the trial.

We have held though establishment of a chain of custody is required for admission of physical items into evidence, the State is not required to exclude every possibility of tampering. *Pollard v. State*, (1979) Ind., 388 N.E.2d 496; *Williams v. State*, (1979) Ind., 387 N.E.2d 1317; *Hutcherson v. State*, (1978) Ind., 380 N.E.2d 1219. The use of evidence cards by police is an efficient way to eliminate chain of custody problems if procedures are properly followed. We are not prepared to hold that is the only acceptable procedure for accounting for the chain of custody. In the case at bar, testimony from parties who handled the exhibits at all stages from seizure to trial was entered and served to sufficiently establish the continuous whereabouts of the exhibits. The admission of the exhibits into evidence was proper.

The trial court is in all things affirmed.

DeBRULER, PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., concurs in result.