**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 12 2015, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NANCY A. McCASLIN**
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WESLEY A. NEW, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 20A03-1404-CR-121 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable David C. Bonfiglio, Judge
Cause No. 20D06-1304-FD-359

**January 12, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

Wesley New appeals his conviction for operating a vehicle while intoxicated, raising the following issues for our review: (1) whether New's substantial rights were violated when the jury was given an incorrect written jury instruction after being advised of the correct instruction verbally; and (2) whether there was sufficient evidence to sustain New's conviction for operating a vehicle while intoxicated. Concluding the jury instruction error was harmless and that there was sufficient evidence to sustain New's conviction for operating a vehicle while intoxicated, we affirm.

## Facts and Procedural History

On the evening of April 4, 2013, New was driving east down a four-lane highway in Elkhart County. New's vehicle crossed both lanes of oncoming traffic—narrowly missing a head-on collision with a tow truck—hit a ditch, clipped a telephone pole, and ran over two signs before finally stopping in a parking lot over a quarter of a mile away from where he originally veered into oncoming traffic.

Sheriff's Deputy Chad Hoien arrived on scene and observed that New exhibited lethargic movement, slurred speech, poor balance, and had glassy and bloodshot eyes. New agreed to take field sobriety tests and successfully completed a horizontal gaze nystagmus test. Before administering additional tests, Officer Hoien was informed that New's driver's license was suspended, and New was arrested. An inventory search of New's car revealed an empty beer bottle and five unopened single shots of tequila.

On the way to jail, New kept falling asleep in the back of the police car, and Officer Hoien had to lift New out of the back seat when they arrived. Officer Hoien

2

administered additional field sobriety tests, including the one-leg stand and the walk and turn. New displayed numerous indicators of intoxication while performing each test. New then took a certified breath test, which did not identify the presence of alcohol. However, Officer Hoien believed New was intoxicated and under the influence of something other than alcohol, and Officer Hoien asked Officer Dustin Lundgren, a certified drug recognition expert, to examine New.

Officer Lundgren observed that New had slow speech, poor balance, and droopy eyelids. Officer Lundgren also observed that New had very red conjunctiva, which is a common sign of marijuana use. Officer Lundgren administered a balance test, a walk and turn test, a one-leg stand, and a finger-to-nose test. New showed indicators of intoxication while performing each test. Officer Lundgren also tested the dilation of New's pupils in both light and dark settings, and he determined that New's pupils were dilated above the normal range in both instances, which is indicative of drug use. Further, New's pulse and blood pressure were slightly elevated.

New told Officer Lundgren that he had slept only one hour the night before and that he had little to eat or drink during the day. He also told the officer that he took four ibuprofen tablets and a Vicodin the day before the accident, smoked marijuana a couple weeks before the accident, and smoked synthetic marijuana a couple days before the accident.

After the examination was complete, it was Officer Lundgren's opinion that New was intoxicated on a combination of cannabis and a narcotic analgesic. New refused to submit to a test of his blood or urine.

On April 9, 2013, the State charged New with operating a vehicle while intoxicated, a Class D felony, and operating a vehicle with a license suspension, a Class A misdemeanor. A jury trial was conducted on March 3, 2014. On the day of trial, New requested a change in language of Preliminary Instruction 5D and Final Instruction 4D, which were identical. Originally, the instructions read as follows: "A person's refusal to submit to a chemical test is admissible into evidence <u>and may be considered as evidence as to the defendant's intoxication</u>." Appellant's Appendix at 99 (emphasis added). New's request, which the trial court granted, was to change the instructions to state: "A person's refusal to submit to a chemical test is admissible into evidence." <u>Id.</u> The modified instruction was correctly presented to the jury by the trial court verbally on three occasions: at the beginning of trial as a preliminary instruction; after the conclusion of evidence; and after closing arguments. However, court staff inadvertently left the uncorrected final instruction in the juror notebooks that were distributed to the jury after final instructions were read, and the uncorrected instruction was accessible during deliberations. The jury found New guilty of all charges.

After the verdict was read and the jury discharged, the trial court reviewed the juror notebooks and discovered that the court staff had not replaced the original Final Instruction 4D with the modified instruction that had been approved and read by the trial court. That same day, the trial court issued an order *sua sponte* recounting the relevant facts regarding the jury instructions and concluding:

This error is regrettable.

4

In <u>Ham v. State</u> . . . the Court found that it was error to utilize this language. That case, as well as, many others indicate that instructions are to be considered as a whole. In this case the Preliminary Instructions were correct (5D) and the Court did correctly verbally instruct the jury in the Final Instruction (4D). Further, the Court having presided over the trial, finds the evidence was so overwhelming that the any [sic] reasonable jury would have rendered a guilty verdict on the OWI Count. The short length of deliberations, approximately twenty (20) minutes, is an indicator that the evidence was overwhelming.

It is also noted on the second count: Operating While Suspended, [New] admitted to this violation in his closing statement.

<u>Id.</u> at 98-100.

A sentencing hearing was held on April 2, 2014, at which the trial court imposed a two-year executed sentence for operating a vehicle while intoxicated and a one-year suspended sentence for operating a vehicle with a license suspension to be served concurrently with the first. New now brings this appeal, which implicates only his conviction for operating a vehicle while intoxicated.

## Discussion and Decision

### I. Jury Instruction

New argues that the jury's receipt of the unmodified written instruction constitutes reversible error.[1] There is no dispute that the written final instruction received by the jury in this case was erroneous. In <u>Ham v. State</u>, 826 N.E.2d 640, 641 (Ind. 2005), our supreme court considered a challenge to a nearly identical jury instruction, which stated "[a] defendant's refusal to submit to a chemical test may be considered as evidence of

---

[1] The State asserts that New's jury instruction claim is unavailable on appeal because he did not seek a mistrial or file a motion to correct error. We observe that the trial court's *sua sponte* order was essentially a denial of a mistrial for which New had not yet asked. Although we agree that a motion to correct error may have been advisable, we do not believe that one was necessary to save this issue for appellate review.

5

intoxication." The court looked to Indiana Code section 9-30-6-3(b), which merely states that "a person's refusal to submit to a chemical test is admissible into evidence." Finding that the instruction was improper, the court reasoned as follows:

> Whether a defendant's refusal to submit to a chemical test is evidence of intoxication or merely that the defendant refused to take the test is for the lawyers to argue and the jury to decide. An instruction from the bench one way or the other misleads the jury by unnecessarily emphasizing one evidentiary fact.

Ham, 826 N.E.2d at 642.

The question, then, is not whether error has occurred but whether a new trial is necessary. "An instruction error will result in reversal when the reviewing court 'cannot say with complete confidence' that a reasonable jury would have rendered a guilty verdict had the instruction not been given." Koch v. State, 952 N.E.2d 359, 370 (Ind. Ct. App. 2011) (citation omitted), trans. denied. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Crawford v. State, 550 N.E.2d 759, 762 (Ind. 1990).

New contends that placement of the unmodified instruction in the jury book is reversible error, and he goes so far as to claim that it amounts to fundamental error, arguing that the jury was misled as to the applicable law. We note, however, that the court in Ham held that this same jury instruction was harmless error given the evidence presented at trial. See id.

Our review of the circumstances of this case leads us to the conclusion that placement of the unmodified written instruction into the juror notebooks was harmless

6

error. The evidence presented at New's trial clearly supports his conviction for operating a vehicle while intoxicated, and we can say with confidence that the jury would have returned a guilty verdict if court staff had placed the correct instruction in the jury notebook.

A person commits the offense of Class A misdemeanor[2] operating a vehicle while intoxicated if he "operates a vehicle while intoxicated . . . in a manner that endangers a person." Ind. Code § 9-30-5-2. Indiana law defines "intoxicated" as

> under the influence of:
> (1) alcohol;
> (2) a controlled substance (as defined in IC 35-48-1);
> (3) a drug other than alcohol or a controlled substance;
> (4) a substance described in IC 35-46-6-2 or IC 35-46-6-3;
> (5) a combination of substances described in subdivisions (1) through (4); or
> (6) any other substance, not including food and food ingredients (as defined in IC 6-2.5-1-20), tobacco (as defined in IC 6-2.5-1-28), or a dietary supplement (as defined in IC 6-2.5-1-16);
> so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

Ind. Code § 9-13-2-86. "The State need not present separate proof of impairment of action, impairment of thought, and loss of control of faculties to establish an individual's intoxication." Woodson v. State, 966 N.E.2d 135, 142 (Ind. Ct. App. 2012), trans. denied. Rather, impairment is determined by considering a person's "capability as a whole." Id. Impairment may be established by evidence of "(1) the consumption of significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or

---

[2] New's offense was charged as Class D felonies because he had a prior conviction for operating a vehicle while intoxicated. See Ind. Code § 9-30-5-3(a) (2013).

bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." Id.

New swerved across two lanes of oncoming traffic, destroyed two road signs, and traveled over a quarter mile before finally coming to rest in a parking lot. When Officer Hoien arrived on scene, he observed New displaying several signs of intoxication, including New's lethargic movement, slurred speech, poor balance, and glassy and bloodshot eyes. New then underwent a number of tests administered by a drug recognition expert, and that expert was convinced that New was intoxicated. The jury heard all of this evidence, and it was more than enough to conclude New was intoxicated.

Moreover, we cannot ignore the fact that the correct preliminary and final instructions were given to the jury verbally on three occasions, and the correct preliminary instruction was placed in the jury notebooks. All things considered, we conclude that New's conviction for operating a vehicle while intoxicated is clearly supported by the evidence and that placement of an incorrect final instruction in the juror notebook was harmless error.

## II. Sufficiency of Evidence

New also challenges the sufficiency of evidence used to support his conviction for operating a vehicle while intoxicated. When reviewing a defendant's claim of insufficient evidence, the reviewing court will neither reweigh the evidence nor judge the credibility of the witnesses, and we must respect "the jury's exclusive province to weigh conflicting evidence." McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (citation omitted). We consider only the probative evidence and reasonable inferences supporting

8

the verdict.  Id.  And we must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt."  Id. (citation omitted).

For the same reasons that New's challenged jury instruction was harmless error, as discussed in the previous section, there was sufficient evidence presented by the State to sustain his conviction.[3]

## Conclusion

Concluding it was harmless error for the court to provide the jury with an incorrect written jury instruction after the court had correctly advised the jury verbally and that there was sufficient evidence to support New's conviction for operating a vehicle while intoxicated, we affirm.

Affirmed.

BAILEY, J., and BROWN, J., concur.

---

[3] Much of New's sufficiency argument is based on his contention that effects from pills or marijuana consumed days before the accident would have worn off and could not have caused him to be intoxicated.  This argument rests on the false assumption that the jury was required to take New at his word.  It was not.  Based on officer testimony, the jury could have concluded that New consumed drugs nearer to the time of the accident than New admitted.